FILED

2021 Mar-16  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TERESA SPILLMAN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:20-CV-00080-RDP** |
| | } | |
| **ANDREW SAUL, Commissioner of Social Security,** | } | |
| | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Teresa Spillman brings this action pursuant to § 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of Social Security ("Commissioner") to deny her claims for disability insurance benefits ("DIB") under the Act. *See also* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

## I.      Proceedings Below

On July 28, 2016, Plaintiff filed her application for social security benefits. (R. 125). Plaintiff alleged a disability onset date of June 28, 2016. (R. 111). The Social Security Administration denied Plaintiff's application on December 8, 2016. (R. 131). Plaintiff then requested and received a hearing before Administrative Law Judge ("ALJ") Doug Gabbard, II, which took place on December 4, 2018. (R. 43-79). Plaintiff and her counsel attended the hearing, and a vocational expert ("VE"), Melissa Brassfield, participated via telephone. (R. 43). On December 31, 2018, the ALJ entered his decision denying Plaintiff's application for DIB after finding that Plaintiff failed to meet the disability requirements of the Act because she retained the

residual functional capacity ("RFC") to perform light work with exceptions.  (R. 27-37).  On November 22, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1-6).  That decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.  42 U.S.C. § 405(g).

## II.    Facts

At the time of the hearing, Plaintiff was 52 years old and had a 12th grade education.  (R. 111, 215).  The VE testified that Plaintiff's previous work experience would be described as a rural mail carrier and sock boarder.  (R. 73).

Plaintiff testified that she suffers from various physical impairments that affect her ability to work – Chronic Obstructive Pulmonary Disease ("COPD"), foot drop, neuropathy in her feet, nerve pain, "bad" nerves, bursitis in her hip, and back pain.  (R. 54-61).  According to Plaintiff, since late June 2016, when she was admitted to the hospital for open heart surgery, and after a quadruple bypass that occurred in early July 2016, these impairments have made her unable to engage in substantial gainful activity. (R. 53-55, 488).  After she could not go back to work, she indicates she became depressed.  (R. 65).

Plaintiff began having nerve pain in 2002 that she claims affect her leg.  (R. 61).  She explained that nerve pain "shoots down [her] leg and at the bottom of [her] toe," and rated the pain level at an eight out of ten.  (R. 67-68).  Plaintiff is prescribed medication and receives shots and exercise instructions from her doctor.  (R. 68).  Plaintiff further explained that because of her foot drop, she wears a foot splint and, though not prescribed, must use a cane.  (R. 54, 59).  Plaintiff cannot use stairs or walk on uneven surfaces without tripping and falling unless she is wearing her foot splint.  (R. 58).  Plaintiff also complained of back pain that started after hurting her back and eventually had surgery on her back in 2003.  (R. 61).  She uses heating pads and heating blankets

to help with that pain.  (R. 70).  Plaintiff further testified that she does not sleep well, potentially because of her nerves.  (R. 70).  Plaintiff has trouble breathing, which causes difficulties while talking, and uses two inhalers daily.  (R. 56-57).  She reports that she is out of breath within 15-20 minutes of activity, and that she cannot stand or sit for longer than 15 minutes.  (R. 59-60).  Particularly with the heat, she says she is out of breath after walking 20 steps from her car to her apartment.  (R. 56).  Plaintiff has received breathing treatments and believes those helped "a little." (R. 57-58).  At the time of the ALJ hearing, Plaintiff had cut back smoking from a pack of cigarettes each day to one pack every two weeks.  (R. 56).

Plaintiff lives alone and obtains assistance from her daughter for some of her daily activities.  (R. 48, 67).  She normally wakes up around 8:30 a.m., lays on the couch or sits in her rocking chair on the front porch, and around mid-day she makes a sandwich or something simple to eat.  (R. 65-67).  Her daughter takes care of the house cleaning every few weeks and drives her to a family lunch every Sunday.  (R. 67, 71).  Plaintiff stated that she drives about twice a week to the store or grocery store.  (R. 64).  She claims that she can barely lift a gallon of milk, and that a grocery store clerk or a neighbor assists her in carrying groceries to and from her car.  (R. 63-65).

The VE determined that Plaintiff had previously worked full-time as a rural mail carrier and a sock boarder.  (R. 53, 73).  Although formally a part-time job, the mail carrier position provided Plaintiff with work on average of four to five days per week.  (R. 63).  Plaintiff stated that despite her leg pain in 2002, she was able to do postal work then, but there would be "no way" she could do that work today.  (R. 61).  When the ALJ asked her why she could not work a 40-hour week (eight hours a day, five days a week), Plaintiff responded: "I can just get up and make my bed and I'm wore out, I ha[ve] to sit down…I'm not able to do no heavy … cleaning or anything. I'm wore out, I can't breathe."  (R. 71).

Regarding orthopedic impairments -- which are the main impairments discussed by Plaintiff on appeal -- the record reflects few medical records post-dating a procedure to remedy those issues. The principal orthopedic records are from November 17, 2003 to December 7, 2005, a time period during which Plaintiff saw Dr. James G. White, III at Northeast Alabama Neurological Services. On November 17, 2003, Dr. White performed an emergency lumbar laminectomy on Plaintiff for her herniated lumbar 4 disk. (R. 349, 357). Dr. White also observed "a very marked foot drop" and "a diminished absent right ankle jerk." (R. 349). A few weeks later on December 8, 2003, Plaintiff returned to Dr. White who noted "[s]he is rid of her severe pain," her foot drop "is dramatically improved," and that she "will need a cock-up splint for her right foot." (R. 348). Dr. White "[held Plaintiff] out of work and [was to] see her back in several weeks." (*Id.*). On March 31, 2004, Dr. White noted that Plaintiff was "doing remarkably well," "[s]he is back at work," and "[t]he foot drop is resolving." On December 5, 2005, Plaintiff complained of left hip pain, and Dr. White's examination showed weakness of the extensor muscle "but this has improved from her last exam." (R. 345). On December 6, 2005, Dr. White ordered an MRI of Plaintiff's lumbar spine which revealed "marked degeneration of the L4 intervertebral disc," but "no evidence of recurrent herniation." (R. 344, 350). Dr. White noted "she may eventually need lumbar interbody fusion." (R. 344).

After her December 2005 appointment, Plaintiff's orthopedic-related complaints were intermittent leading up to her alleged disability period. On February 27, 2012, Plaintiff visited the emergency room at Dekalb Regional Medical Center after she was involved in a vehicle roll over. Examination of Plaintiff revealed joint and extremity pain, abrasions, and contusions. (R. 445-46). Plaintiff was released in stable condition. On January 10, 2014, Plaintiff visited the emergency room at Gadsden Regional Medical Center complaining of a cough. (R. 513). She

also complained of pain between her shoulder blades. (R. 515). Plaintiff was discharged home with a "clinical impression" noted as "acute pneumonia." (R. 517).

There are other medical records from various treating and examining physicians in the record. On June 21, 2016, Plaintiff saw Dr. Darryl Prime of Southern Cardiovascular Associates for a follow-up after visiting the emergency room a few days earlier due to chest pains. (R. 471, 504). Dr. Prime's examination of Plaintiff found no balance or sensory abnormalities; no back, neck, joint, or muscle pain; no claudication; no decreased range of motion; and no trauma. (R. 501-03). His assessment listed shortness of breath causing difficulty speaking, coronary artery disease, ischemic dilated cardiomyopathy, essential hypertension, pneumonia, hyperlipidemia, and tobacco abuse. (R. 474). Dr. Prime recommended Plaintiff undergo stress testing of the heart to evaluate her chest pain "as it is concerning for progressive angina." (*Id.*).

On June 29, 2016, Dr. Prime reviewed the results of Plaintiff's stress test and found "significant multivessel coronary artery disease." (R. 498). Plaintiff was admitted to Gadsden Regional Medical Center that day. After being admitted, Plaintiff was seen by Dr. Daniel McCoy. (R. 547). Other than noting coronary and breathing issues, the only abnormalities Dr. McCoy found were "right LE foot drop R/T spinal surgery years ago" and "right moderate foot drop observed with minimal dorsiflexion of foot." (R. 547-48). On July 5, 2016, Dr. McCoy performed a coronary artery bypass graft on Plaintiff. (R. 488). On July 12, 2016, it was noted that, postoperatively, Plaintiff had recovered well and was discharged in good condition with a diagnosis of coronary disease, history of anticoagulation, and tobacco abuse. (R. 475). Plaintiff testified that her heart is now stable because she is on medication. (R. 54).

During a follow-up appointment on August 11, 2016, Dr. Prime noted "[s]he is doing well with no chest pain or shortness of breath. She is having left-sided back pain but this is mild." (R.

559).  On September 14, 2016, at another follow-up appointment with Dr. Prime, Plaintiff complained of chest pain, shortness of breath, and depression. (R. 551-52). Upon examination, no new abnormalities or acute distress was observed and it was noted that her "chest pain symptoms sound more like musculoskeletal type discomfort."  (R. 551-55).

There is also record evidence indicating Plaintiff underwent a psychological evaluation on November 9, 2016, from Dr. Mary Arnold. (R. 575-78).  Plaintiff reported sleeping nine hours each day, eating three meals the prior day, walking with her daughter at the park, and going out to eat with her daughter.  (R. 576).  Further, Plaintiff stated that her daughter did most of the work around the house.  (R. 578).  Dr. Arnold noted that Plaintiff's "gait/posture are casual w/o overt indicator of pain/impairment."  (R. 575).  On April 25, 2018, Plaintiff's therapist and psychiatrist at CED Mental Health Center diagnosed Plaintiff with major depressive disorder.  (R. 616).

On January 16, 2017, April 17, 2017, July 31, 2017, and October 26, 2018, Plaintiff was seen by Dr. Prime for follow-ups of her heart disease and complaints of heart rate.  (R. 590, 595, 600, 605).  During all four visits, Dr. Prime observed Plaintiff's back, sensations, balance, gait, and stance were all normal.  (R. 592, 597-98, 602, 607).  Dr. Prime's assessments from each visit mirrored his June 29, 2016 assessment of Plaintiff: she had shortness of breath causing difficulty speaking, coronary artery disease, ischemic dilated cardiomyopathy, essential hypertension, pneumonia, hyperlipidemia, and tobacco abuse.  (R. 502, 593, 598, 603, 608).  During the July visit, Plaintiff added a complaint of significant lower leg pain.  (R. 600).  Dr. Prime noted, "she may have discomfort related to the harvest graft site f[rom] her bypass surgery."  (R. 603).  It was also during this visit that Dr. Prime referred Plaintiff (at her request) to a pulmonologist for shortness of breath and COPD.  (R. 600, 603).

Plaintiff saw Dr. Sheylan Patel, a lung doctor at UAB Hospital, in September 2017 to evaluate the cause of Plaintiff's shortness of breath. (R. 637). Dr. Patel was "unable to comment on [a] prognosis as the diagnosis is not clear" (*id.*), although he consistently observed Plaintiff to have "suspected COPD vs. ILD (? smoking related)." (R. 642, 644, 648). Dr. Patel's only abnormal findings besides the referenced pulmonary impairments were "right foot drop, decreased sensation up to ankle" on January 5, 2018. (R. 638-39). On February 23, 2018, Plaintiff visited Dr. Patel again for "acute COPD exacerbation," but she also complained of muscle aches in her back. (R. 641).

Plaintiff's chief argument relates to orthopedic records from Dr. Danielle Powell of UAB Spain Rehabilitation Center. Plaintiff submitted these records (from February 12, 2017 through November 27, 2018) after the ALJ made his decision.[1] (R. 5). Plaintiff saw Dr. Powell five times during this period and consistently complained of orthopedic pains. (R. 81-110). On July 12, 2017, Plaintiff presented with "pain left, lower leg, calf around ankle through to top of foot, numbness right, ankle, foot, toes, weakness right, ankle." (R. 81). Plaintiff dated the onset as 2003, after she had back surgery. (R. 81). Plaintiff described her pain as "aching, burning, tingling, dull and numb" and said the severity was "moderate" and "worsening." (R. 81). She relieved the pain by changing her position and taking aspirin. (R. 81). Dr. Powell's only findings of abnormality were "joint pain, muscle pain, decreased range of motion" and "decreased sensation in the right L5, S1." (R. 82-83). He diagnosed Plaintiff with right foot drop and neuropathic pain. (R. 83).

---

[1] Plaintiff initially requested the documents on November 13, 2018, again a second time on November 27, 2018, and still again a third time on February 6, 2019. Dr. Powell faxed the requested documents to Plaintiff's attorney on February 13, 2019. (R. 80). Although during the ALJ hearing Plaintiff's attorney told the ALJ that "all the records have been submitted," Plaintiff states this was in error. (Pl. Mem., 9). However, the Appeals Counsel found there was "no reason under our rules to review" the ALJ's decision and further that there was no showing of "a reasonable probability that [the new evidence] would change the outcome of the decision." (R. 1-2).

On October 19, 2017, Plaintiff presented with the same pain complaints but added another one -- right hip pain. (R. 85). She stated that her hip pain had started six months prior and described it as a "burning, sharp pain that radiates down her thigh." (*Id*.). Plaintiff described her neuropathic foot pain to Dr. Powell as "pins and needles," "worsening," and "severe," and claimed it was exacerbated by walking, climbing stairs, and prolonged standing. (*Id*.). The only new abnormality found was "palpitation right trochanter produced pain" and the only new diagnosis was trochanteric bursitis of the right hip. (R. 87). Plaintiff received a right trochanteric bursa steroid injection and reported having no pain at her next three visits. (R. 88, 94, 100, 102).

On January 22, 2018, Plaintiff reported she was experiencing foot weakness and moderate "burning, radiating, [and] sharp" right knee pain and numbness. (R. 90). The medical record reflects that musculoskeletal and neurological findings were found unchanged. (R. 92). Dr. Powell's diagnoses also were unchanged but he did add a note "course: worsening." (R. 93). He observed hypertension, joint pain, and depression during multiple visits. (R. 91, 96-97).

On April 25, 2018, and November 8, 2018, Plaintiff presented with the same issues and severity and reported that the pain impacted her ability to walk but that the injection had improved her pain for three months. (R. 96, 102, 104). These medical findings were unchanged and during both visits Plaintiff received a right lumbar paraspinal trigger point injection. (R. 98, 100, 102). During her April 25 visit, she was diagnosed with myofascial pain. (R. 101).

Plaintiff participated in telehealth remote cardiopulmonary rehabilitation at UAB from January 22 to April 25, 2018, where staff noted Plaintiff's "chronic back pain (s/p surg complicated by foot drop since surgery)" in her medical history (R. 580). By the time she completed the program, staff commented that Plaintiff "did a 6mwt at 950 feet with no assisted devices." (R. 581).

### III.    ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful."  20 C.F.R. § 1572.  "Substantial" work activity is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful" work activity is work that is done for pay or profit.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in activity that meets both of this criteria, then the claimant cannot claim disability.  20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.  *Id.*  Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If such criteria are met, the claimant is declared disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Even if the claimant cannot be declared disabled under the third step, the ALJ may still find a disability under the next two steps of the analysis.  The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments.  20 C.F.R. § 404.1520(e).  The ALJ bases the claimant's RFC on relevant medical and other evidence in the record.  *Id.*  In this fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is determined to be capable of performing past relevant work, then the claimant is not disabled.  *Id.*  If the ALJ finds the claimant unable to perform past relevant work, then the analysis

proceeds to the fifth and final step.  20 C.F.R. § 404.1520(a)(4)(v).  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).  If the ALJ finds the claimant can do no other work, then the claimant will be determined to be disabled.  *Id.*

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a prima facie case by demonstrating that she can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the (Commissioner) to establish that the claimant can perform other substantial gainful employment."  *Id.*

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 28, 2016, the alleged onset date of her disability, and that she met the insured status requirements of the Act through December 31, 2021.  (R. 29).  Based upon the medical record evidence presented, the ALJ determined that Plaintiff has several severe impairments that significantly limit her ability to perform basic work activities: ischemic heart disease, essential hypertension, acute myocardial infraction, COPD, left foot drop, and affective disorder.  *Id.* However, the ALJ determined that Plaintiff's severe impairments, alone or in combination, do not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 30).  Additionally, the ALJ determined that Plaintiff's other impairments -- hyperlipidemia, tobacco addiction, insomnia, and lumbar fusion with chronic back pain -- were

10

not sufficiently severe to qualify, considered singly or in combination, because they do not cause more than a minimal limitation in Plaintiff's ability to perform basic work activities. (R. 29-30). Although the ALJ recognized Plaintiff had back problems before the fusion in 2003, the ALJ observed Plaintiff had few complaints about her back since then, which had been noted to be normal. (R. 30). Moreover, the ALJ found that although Plaintiff had a history of hyperlipidemia, it was being treated. (*Id.*).

Following the testimony of the VE, the ALJ concluded that although Plaintiff was precluded from performing any of her past relevant work, she was not disabled as defined by the Act because her age, education, work experience, and RFC would allow her to make a successful adjustment to other work that exists in significant numbers in the national economy. (R. 35-36). After consideration of the entire record, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following limitations: she could only occasionally climb ramps or stairs; could not climb ladders, ropes or scaffolds; she could only occasionally balance; could not frequently kneel or crawl; she could only occasionally stoop and crouch; she could not walk on uneven surfaces; she must avoid concentrated exposure to extreme temperatures, humidity, fumes, odors, dusts, gases, poor ventilation and other pulmonary irritants; she must avoid all exposure to hazards such as open flames, unprotected heights and dangerous moving machinery; she is limited to unskilled work which is simple, repetitive and routine; her supervision must be simple, direct, concrete, supportive and non-confrontational; her interpersonal contact with supervisors and co-workers should be superficial in nature; she should have only occasional, well-explained workplace changes; she must have normal, regular work breaks every two hours or so; she should have only occasional contact with the general public; and she must be allowed to alternately sit and stand every 15 to 20 minutes throughout the workday for the purpose

of a brief positional change, but without leaving the workstation. (R. 32). The ALJ found that Plaintiff could still perform the light unskilled jobs of small product assembler and electrical accessory assembler identified by the VE. (R. 35-36). The ALJ concluded that Plaintiff had not been under a disability at any time from June 28, 2016 through the date of the ALJ's decision. (R. 37).

## IV.    Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed and remanded for further consideration. Plaintiff advances three arguments in support of her position. First, Plaintiff claims that the ALJ erred in finding that her orthopedic problems were not a "severe" impairment. Second, Plaintiff contends that the ALJ failed to properly consider her impairments in combination, specifically her heart condition, COPD, and orthopedic issues. Third, Plaintiff alleges that the Appeals Council improperly declined to review Dr. Powell's records, which she says would have allowed the ALJ to find a severe orthopedic impairment.

## V.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

12

is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "(i)t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.  The Commissioner's conclusions of law are not entitled to the same deference as findings of fact and are reviewed *de novo*.  *Ingram v. Comm'r, Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## VI. Discussion

For the reasons set forth below, and after careful review, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

### A. Substantial Evidence Supports the ALJ's Finding that Plaintiff's Orthopedic Impairments Are Not Severe

Plaintiff argues that the ALJ's decision that Plaintiff's orthopedic impairments are not "severe" is not supported by substantial evidence. (Pl. Mem. at 12).  The court disagrees.

An impairment or combination is considered "severe" if it "significantly limits [the] claimant's physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).  "Basic work activities" include the ability to: (1) walk, stand, sit, lift, pull, reach, or carry; (2) see, hear, and speak; (3) understand, carry out, and remember simple instructions; (4) use judgment; (5) respond appropriately to supervision, co-workers, and unusual work situations; and (6) deal with

changes in a routine work setting.  20 C.F.R. § 404.1521(a).  A claimant bears the burden of proving that their alleged impairment is severe.  *See* 20 C.F.R. §§ 404.1512; 416.912; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  This burden is not heavy; an impairment is not considered severe only when the abnormality is so slight and its effect is so minimal that it would "clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986); *see also Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985) (requiring the court to consider "whether a reasonable mind could review the appellant's evidence of (the impairment) and still conclude that that condition had only a minimal effect on her ability to perform the most general and rudimentary functions of a work activity as those functions are set out in the regulation"); *but see Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (affirming the ALJ's finding that Plaintiff's impairments are not severe, as they are "mild impairments which are amenable to medical treatment").

A claimant must produce "evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).

Although Plaintiff has a history of lumbar back problems prior to the fusion in 2003, the ALJ noted that since the fusion, she has had few complaints and a medical professional has determined her back is normal.  (R. 30).  Plaintiff attacks this finding and points to Dr. Powell's records, as well as to her own testimony about her foot drop and foot neuropathy, her inability to stand for more than 15 minutes due to her back pain, the shots she required for her back and hip,

and "shooting pains" she claims she experienced daily. (Pl. Mem. at 12-17). Plaintiff argues that Dr. Powell's records support Plaintiff's testimony. (*Id.* at 13). She also complains that the ALJ did not have all orthopedic records before him.

Plaintiff conflates these two arguments. Whether the Appeals Council erred in refusing to review Dr. Powell's records is a separate question, which is addressed below. With regard to the evidence provided to the ALJ, Plaintiff's argument fails because Plaintiff did not satisfy her burden to show that this alleged impairment is "severe" and that the prevalence of the condition, severe or not, caused such work-related limitations that she was under a disability. Plaintiff merely cites her own testimony. But, the ALJ's decision is based on substantial evidence because the ALJ determined the severity of Plaintiff's impairments in light of the medical records and opinion evidence, as well as from Plaintiff's testimony.

Based on this court's review of the record, the court concludes that substantial evidence supports the ALJ's determination that Plaintiff's back impairments do not constitute "severe" impairments. As the ALJ properly noted, although Plaintiff has a history of lumbar back problems, since her fusion surgery in 2003 she has had few complaints and her back had been noted to be normal. (R. 30). It is well settled in this jurisdiction that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the decision is specific enough for the district court to find the ALJ considered the whole record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). *See also Putnam v. Colvin*, 2016 WL 5253215 (N.D. Ala. 2016).

No evidence introduced before the ALJ demonstrates that Plaintiff's orthopedic impairments rise to a level that affects her ability to perform basic work activities during any consecutive twelve-month period. *See* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Between June 2016 and October 2018, Plaintiff's medical records from Gadsden Regional Medical Center

consistently show normal findings for back, balance, gait and stance. The day after Plaintiff's purported onset date, Dr. Prime found "no back pain, no neck pain, no joint pain, no muscle pain, no claudication, no decreased range of motion, no trauma." (R. 501-03). In a follow-up visit in August 2016, Dr. Prime noted Plaintiff was "having left-sided back pain but this is mild." In all follow-up visits after Plaintiff's bypass surgery, Plaintiff's chief complaint was chest pain and issues with heart rate. Moreover, in November 2016, Dr. Mary Arnold observed that Plaintiff's "gait/posture are casual w/o overt indicator of pain/impairment." Additionally, the available medical record evidence related to Plaintiff's 2003 back surgery suggests marked improvement. Plaintiff failed to establish that she has severe impairments due to orthopedic conditions and that these impairments cause work-related limitations. Similar to the evidence in *Landry*, no "clinical findings indicative of a back impairment of the degree of severity described by [Plaintiff]" exist. *Landry*, 782 F.2d at 1553. For all these reasons, substantial evidence supports the ALJ's finding that Plaintiff's orthopedic conditions do not qualify as severe impairments limiting her ability to work.

### B.     The ALJ Properly Considered Plaintiff's Impairments in Combination

Plaintiff next argues that the ALJ did not properly consider her impairments in combination. (Pl. Mem. at 16-17). Again, the court disagrees. The ALJ's RFC finding accounts for Plaintiff's credible work-related limitations from all her impairments. (R. 32). Consequently, the ALJ's RFC finding reflects the combined effect of Plaintiff's impairments on her work ability.

When a claimant alleges several impairments, the ALJ must consider the impairments in combination and determine whether the combined impairments render the claimant disabled. *Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017). The ALJ must address the degree of impairment caused by the "combination of physical and mental medical

problems" and consider each impairment alleged and the combined effect of those impairments. *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986).  This evaluation should be completed with respect to the effect the impairments have on the ability to fulfill the duties of the claimant's past work or other work.  *Lucas v. Sullivan*, 918 F.2d 1567, 1574 (11th Cir. 1990).

In this circuit, an ALJ's statement that a claimant did not have an impairment or combination of impairments that rendered her disabled is enough to show that the ALJ in fact considered the combined effects of the impairments.  *See Wilson*, 284 F.3d at 1224-25; *Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991); *Scott v. Colvin*, 652 F. App'x 778, 781 (11th Cir. 2016) (citing *Wilson*, 284 F.3d at 1224-25; *Jones*, 941 F.2d at 1533). Here, "it is readily apparent from the ALJ's exhaustive discussion of [Plaintiff's] various impairments and their functional limitations that the ALJ considered the combined effect of her impairments." *See also Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (rejecting Plaintiff's claim that the ALJ failed to consider her impairments in combination since the ALJ stated she had no "'impairment, individually or in combination' that met one of the listed impairments").

The ALJ described in detail why Plaintiff's COPD, hypertension, heart disease, foot drop, and affective disorder did not meet the clinical criteria under the relevant provisions.  (R. 30-32). The ALJ's statement that Plaintiff did not have an impairment or combination of impairments that rendered her disabled is evidence that the ALJ considered the combined effects of her impairments. *See Nichols*, 679 F. App'x at 797.  Therefore, Plaintiff's argument on this point also fails.

C. **The Appeals Council's Determination that Dr. Powell's Records Did Not Show a Reasonable Probability That They Would Change the Outcome of the Decision was not in Error**

Plaintiff argues that the Appeals Council's determination that there was not a reasonable probability Dr. Powell's records would change the outcome of the ALJ's decision was in error. (Pl. Mem. at 15).  However, this argument also fails because the new evidence does not contradict the ALJ's conclusion regarding the severity of Plaintiff's back condition.

With only few exceptions, a claimant may present new evidence at each stage of the administrative process.  *Ingram v. Comm'r, Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  If the claimant shows "good cause" for failing to submit the evidence to the ALJ, it can be presented to the Appeals Council.  *Id.* at 1259-60.  The Appeals Council must consider "new, material, and chronologically relevant evidence" and must review the case if the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Id.* at 1261; 20 C.F.R. § 404.970(b).  New evidence is material if it is relevant and probative so that there is a reasonable possibility that it would change the administrative result.  *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 692 (11th Cir. 2020).  New evidence is chronologically relevant if it related to the period on or before the date of the ALJ hearing.  *Id.* at 692.

When denying a request for review, the Appeals Council is not "required 'to provide a detailed discussion of a claimant's new evidence.'"  *Id.* at 692 (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014)).  However, it must "apply the correct legal standards in performing its duties."  *Mitchell*, 771 F.3d at 784.  In *Hethox v. Comm'r of Soc. Sec.*, the court found that there was "nothing in the Appeals Council's denial to indicate that it properly determined whether the new, material evidence met Listing 12.05(C)'s requirements."  638 F. App'x 833, 836 (11th Cir. 2015).  "Failing to provide the reviewing court with sufficient reasoning

for determining that the proper legal analysis has been conducted mandates reversal." *Id.*   In *Mitchell*, the court determined that the proffered new evidence did not demonstrate the existence of an entirely new medical condition that might have caused the claimant's pain, but instead was additional evidence of claimant's condition.  *Mitchell*, 771 F.3d at 783.  Thus, the court found no affirmative indication that the Appeals Council perfunctorily adhered to the ALJ's decision; instead, the Appeals Council had expressly stated in its notice to claimant that "it had considered his additional evidence," so the court found "no basis on this record to second-guess that assertion." *Id.*

The Appeals Council specifically acknowledged Plaintiff's new evidence, stated it considered her reasons for disagreeing with the ALJ's decisions, and concluded that the new evidence did not provide a basis for changing the ALJ's decision.  (R. 1-2).  Such a statement by the Appeals Council is sufficient to demonstrate it did not err by failing to consider new evidence. *Mansfield v. Astrue*, 395 F. App'x 528, 530 (11th Cir. 2010) (rejecting the plaintiff's argument that Appeals Council was required to explain in non-conclusory terms why additional evidence would have changed the ALJ's decision and instead finding that Appeals Council's statement of consideration of new evidence was sufficient).

When the Appeals Council denies review and refuses to consider new evidence, that decision is subject to judicial review.  *Washington v. Comm'r, Soc. Sec. Admin.*, 806 F.3d 1317, 1320 (11th Cir. 2015) (finding the Appeals Council erred in failing to consider new evidence where the new evidence was inconsistent with an earlier medical evaluation and created a "reasonable probability" it would "change the administrative results").  Whether new evidence meets the "new, material, and chronologically relevant standard" is a question of law subject to *de novo* review. *Washington*, 806 F.3d at 1321.

Plaintiff submitted additional evidence to the Appeals Council after Dr. Powell faxed to Plaintiff her records. (R. 80). These records were comprised of 31 pages from Dr. Powell dated February 12, 2017 through November 27, 2018. (R. 2, 4). They relate to Plaintiff's claims of foot, knee, ankle, and hip pain, but they indicate that Plaintiff never complained directly about her back. (R. 81-110). Rather, she only mentioned her back when the other pains began after her 2003 back surgeries. (*Id.*). The Appeals Council concluded that this evidence did "not show a reasonable probability that it would change the outcome of the decision." (R. 2). Accordingly, the Council concluded that Plaintiff did not meet her burden of showing that this additional evidence was "new, material, and relates to the period on or before the date of the hearing decision" because she did not show that it created a reasonable possibility that it would change the administrative result and that it was inconsistent with earlier evaluations. (R. 1).

The only objective medical records Plaintiff points to in support of her argument of back pain are those from Dr. Powell. (Pl. Mem. at 13). Plaintiff cites to Dr. Powell's notes from October 19, 2017, in which states: "the severity is severe" and "course worsening" when referring to the neuropathic pain in her right foot and hip pain. (Pl. Mem. at 14). Plaintiff also cites to complaints of right knee and hip pain from January 22, 2018, in which she refers to the right lumbar paraspinal trigger point injections she was receiving for "severe pain" in late 2018. (Pl. Mem. at 14-15). Plaintiff argues that this evidence is new "evidence of chronic pain and orthopedic issues" and is material because "it constitutes strong objective evidence to support [her] allegations of disabling pain." (Pl. Mem. at 15). She further contends that it is chronologically relevant "in that it fits exactly within the period for which [she] alleges disability." (*Id.*). Plaintiff stresses the importance of Dr. Powell's records because the State Agency's physician did not have Dr. Powell's orthopedic records and did not examine Plaintiff himself. (Pl. Mem. at 16). Plaintiff also complains that there

was no consultative exam performed regarding her hip, back, leg, or foot conditions.  (Pl. Mem. at 16).  Dr. Powell's records, according to Plaintiff, "refute any notion that [she] is capable of a good deal of walking and standing."  (Pl. Mem. at 16). However, Plaintiff fails to substantiate this claim. Plaintiff has failed to explain exactly how this evidence shows a reasonable probability that it would change the outcome of the decision. Nor has she cited to any case law to support her argument.

In *Vega v. Commissioner of Soc. Sec.*, the claimant argued that the Appeals Council failed to remand her case to the ALJ on the basis of new and material evidence.  265 F.3d 1214, 1218 (11th Cir. 2001).  The court evaluated that new evidence regarding the severity of the claimant's spinal problems and found that it was new and non-cumulative because it documented a herniated disc and corrective surgery that occurred after the ALJ's decision. And, the *Vega* panel concluded the new evidence was material because it contradicted the ALJ's findings and conclusions regarding the severity of the claimant's spinal issues.  *Id.* at 1218-19.

The court is aware of decisions that have determined automatic remand is warranted where the Appeals Council "perfunctorily adhere(s)" to the ALJ's decision. *See Epps v. Harris*, 624 F. 2d 1267, 1273 (5th Cir. 1980); *Bowen v. Heckler*, 748 F.2d 629, 636 (11th Cir. 1984).  But, there is not a reason to remand here. In *Vega*, the new evidence concerned disc surgery, and the unavailable medical records related to the same specific spinal problem that was at issue in that case. *Vega*, 265 F.3d at 1216.  And, the medical records in *Vega* demonstrated a narrowing of intervertebral disc space but no fracture or dislocation, and a diagnosis of degenerative disc disease.  (*Id.*). That new evidence -- the discovery of a herniated disc and then corrective surgery -- directly contradicted the ALJ's findings and conclusions regarding the severity of that claimant's spinal problems.

Here, however, the new evidence does not contradict the ALJ's conclusions regarding the severity of Plaintiff's orthopedic issues.   The ALJ's only conclusion relating to Plaintiff's orthopedic issues relates to her back pain, and the ALJ properly concluded that the evidence indicated that few complaints were made and the record included notes indicating her back was normal.  (R. 30).  Dr. Powell's records relate mostly to Plaintiff's claims of foot, knee, ankle, and hip pain.  (R. 81-110).  Indeed, these records show that Plaintiff never complained directly about her back, only stating that her other pains began after her 2003 back surgery.  (R. 81).  On two occasions, Plaintiff received a right trochanteric bursa steroid injection and right lumbar paraspinal trigger point injection from Dr. Powell and self-reported no pain afterward.  (R. 100, 102).  Plaintiff suggested that an earlier injection had helped, and requested it again at a later visit, but even that was only after presenting with knee and foot pain.  (R. 104). In addition, Dr. Powell only diagnosed Plaintiff with foot drop, neuropathic pain, trochanteric bursitis, and myofascial pain. There was no significant diagnosis related to her back.

The only other note related to Plaintiff's back issues was Dr. Powell's observation of decreased sensation in her right L5, S1, a spinal motion segment.[2]  (R. 83).  Simply put, this fact alone does not generate a reasonable possibility that consideration of it would change the administrative results and it does not contradict the ALJ's conclusion regarding the severity of Plaintiff's orthopedic issues.  Again, the ALJ was aware of Plaintiff's nerve pains, foot drop, and back pain when making his decision, which rested on substantial evidence.

The Appeals Council did not err in concluding that there was not a reasonable possibility that the newly submitted evidence would change the ALJ's decision.

---

[2] David DeWitt, MD, *All about L5-S1 (Lumbosacral Joint)*, SPINE-HEALTH, https://www.spine-health.com/conditions/spine-anatomy/all-about-l5-s1-lumbosacral-joint (last updated Oct. 11, 2019).

## VII.    Conclusion

After review of the administrative record, and considering all of Plaintiff's arguments, the court finds that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and in accordance with the applicable law.   The Commissioner's final decision is therefore due to be affirmed.  A separate order that is consistent with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 16, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE